*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0432**

In the Matter of:
Ashley Elisabeth Boecker
o/b/o C. E. L. and M. T. L., petitioner,
Respondent,

vs.

Correy Michael Lorenz,
Appellant

**Filed November 16, 2015
Affirmed
Bjorkman, Judge**

Washington County District Court
File No. 82-FA-15-232

Suzanne E. Guertin, Julia M. Craig, Southern Minnesota Regional Legal Services, Inc., St. Paul, Minnesota (for respondent)

Ryan L. Kaess, Kaess Law, LLC, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

### U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

Appellant-father Correy Michael Lorenz appeals an order for protection (OFP) issued against him in favor of respondent-mother Ashley Elisabeth Boecker on behalf of

their minor children. Because sufficient evidence supports the OFP, and the district court did not err in considering father's courtroom demeanor, we affirm.

## FACTS

The parties share joint custody of their two children, C.E.L., age 6, and M.T.L., age 8. The children spent the weekend of January 17-18, 2015, with father. Two days later, mother petitioned the district court for an OFP on behalf of the children based on C.E.L.'s report that father injured her over the weekend. The district court granted an ex parte OFP, scheduled an evidentiary hearing, and appointed a guardian ad litem (GAL) to investigate the matter.

During the evidentiary hearing, mother testified consistent with her petition: after returning home on Sunday evening, C.E.L. told her that father threw her against a wooden chair earlier that day. Mother felt a lump on C.E.L.'s head. C.E.L. expressed fear but still wanted to see her father. C.E.L.'s maternal grandmother testified that she was present the day after the incident and C.E.L. recounted the same events to her, complained of a headache, and said that she was afraid of father. The GAL testified that he met with the children who both corroborated C.E.L.'s initial report to mother. M.T.L. said that he observed the incident, and both children stated that father forcibly pushed C.E.L. down into a wooden chair, causing her to hit her head. The GAL further stated that C.E.L. was afraid to see her father again because he would be upset that she reported the incident.

Father called five family members as witnesses. Four testified that they were with the children for some time on Sunday and did not witness an assault or observe behavior

2

that was out of the ordinary for either child.  Father testified that the children were playing outside that day.  When they refused to come inside at his request, he grabbed C.E.L. by her jacket, yelled at her for not listening to him, and sent her to her room. Father denied pushing her into a chair.  When asked a general question about the location of his residence, father responded that mother enrolled his kids in a school district "without [his] permission, and the courts allowed her to get away with it," and that he bought a house in the same district so "she couldn't move them ever again."

At the conclusion of the hearing, the district court found that father became angry, grabbed C.E.L. by the shirt, and pushed her into a chair, causing her to strike her head. But the district court continued the ex parte OFP, asking the parties to submit legal briefs concerning whether father's actions constitute domestic abuse.

On February 10, 2015, the district court issued an OFP on behalf of both children. In addition to its findings with respect to C.E.L., the district court found that father inflicted fear of imminent harm or injury on M.T.L. by hurting C.E.L. in front of him. The district court awarded father supervised parenting time pending a review hearing at which time the court would consider the GAL's parenting-time recommendations. Following the review hearing, the district court issued an order adopting the GAL's recommendations that father have supervised parenting time and attend anger-management therapy.  Father appeals the issuance of the OFP.

**D E C I S I O N**

## I.  The evidence was sufficient to support the issuance of an OFP.

The Minnesota Domestic Abuse Act authorizes district courts to issue an OFP restraining an "abusing party from committing acts of domestic abuse." Minn. Stat. § 518B.01-.02 (2014). "Domestic abuse" is defined to include "physical harm, bodily injury, or assault" and "the infliction of fear of imminent physical harm, bodily injury, or assault" committed against a family or household member. Minn. Stat. § 518B.01, subd. 2(a)(1)-(2). To establish domestic abuse, a party must show "present harm or an intention on the part of the [alleged abuser] to do present harm." *Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 489 (Minn. App. 2005) (quotation omitted). We review a district court's issuance of an OFP for abuse of discretion. *Id.* A "district court abuses its discretion if its findings are unsupported by the record or if it misapplies the law." *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn. App. 2009) (quotation omitted).

Father first argues the evidence is insufficient to support an OFP because his actions were limited to "setting his daughter on the chair" which "led to her incidental injury." He points to his own testimony that his normal form of discipline is using time-outs, and highlights the testimony of his witnesses that the children did not report the abuse to them or appear out of the ordinary on the day of the incident. The district court rejected father's argument, finding that he "forcefully pushed" C.E.L. into the chair, causing physical harm. The record supports these findings.

C.E.L. told mother, her grandmother, a doctor, and the GAL that father pushed her into the chair with enough force to cause her to strike her head. M.T.L. recounted the

4

same sequence of events for the GAL. Father denied pushing C.E.L. into a chair, and essentially asks this court to reweigh the evidence. We decline to do so. *See Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004) (stating "[w]e neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder").

Father next contends the evidence is insufficient to support an OFP because the district court did not find that he intended to physically harm C.E.L. and the evidence does not support such a finding. We are not persuaded. As the district court observed, issuance of an OFP turns on whether the actor physically harmed a family member; where there is evidence of physical harm, there is no mens rea requirement as there is in a criminal assault case. *Compare* Minn. Stat. § 609.2242, subd. 1 (2014) (defining criminal domestic assault as an act committed with intent to cause fear or an intent to inflict bodily harm), *with Kass v. Kass*, 355 N.W.2d 335, 337 (Minn. App. 1984) (defining domestic abuse for OFP purposes as requiring "either a showing of present harm, or an intention on the part of appellant to do present harm"). Because the district court found that father committed physical harm—domestic abuse against C.E.L.—it did not need to address intent.

Finally, father contends there was insufficient evidence that his actions caused fear in M.T.L. We decline to consider any argument concerning M.T.L. because father did not adequately brief the issue and did not support his assertion with legal analysis. *See Whalen ex rel. Whalen v. Whalen*, 594 N.W.2d 277, 282 (Minn. App. 1999) (citing *Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994)).

Based on our careful review of the record, we conclude that ample evidence supports the issuance of the OFP.

**II.  The district court did not err by considering father's courtroom demeanor in assessing credibility.**

Father bases his assignment of error on statements the district court made during the March 6, 2015 review hearing concerning the GAL's parenting-time recommendations. During the hearing, the district court stated that "demeanor is an important factor" and that father's demeanor when testifying that he moved because the court allowed mother to "get away with" moving the children to another district was "consistent with someone who has [a] real anger issue." The district court made this statement in the context of considering the GAL's recommendation that father address his anger issue in therapy. Mother asserts that what transpired at the review hearing is outside the scope of this appeal. We nevertheless will briefly consider the merits of the argument in the interest of judicial economy.

Father cites no authority for the bald assertion that a fact-finder cannot consider a witness's general courtroom demeanor in assessing credibility. The law is to the contrary—a district court has discretion to consider courtroom demeanor when determining whether a witness is credible. *See Nelson v. Nelson*, 291 Minn. 496, 497, 189 N.W.2d 413, 415 (1971) (holding that reviewing courts are bound to accept credibility determinations because only the district court judge has been permitted to observe and evaluate testimonial demeanor). And when jurors serve as the finders of fact, district courts expressly direct them to consider the manner of a witness when

6

deciding what testimony to believe and how much weight to give it. 4 *Minnesota Practice*, CIVJIG 12.15 (2014). We cannot conclude that a district court errs in considering a witness's courtroom demeanor when assessing credibility.

Moreover, the district court based the OFP on its findings about what happened on the day in question. At the evidentiary hearing, the district court stated that "the demeanor that I saw on the witness stand of [father] is somebody who probably has a real problem with temper and controlling that temper," but went on to clarify that "the question is what actually occurred here." Accordingly, any claimed error by the district court is harmless.

**Affirmed.**